**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | 2:08cr82-WHA |
| ) | |
| BYRON CHARLES COLLINS ) | |
| ) | |

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

On April 16, 2008, the Middle District of Alabama Grand Jury returned a single count indictment against defendant, Byron Charles Collins ("Collins). The indictment alleges Collins knowingly possessed with intent to distribute 100 grams or more of a mixture and substance containing a detectable amount of heroin, a Schedule I Controlled Substance, in violation of 21 U.S.C. § 841(a)(1). Collins argues the consent for a search of his vehicle was not voluntary and that law enforcement did not have reasonable suspicion to prolong the traffic stop, thus violating his Fourth Amendment right to be free from unreasonable search and seizure. *See* Doc. # 17, *Motion to Suppress*. For the reasons below the Magistrate Judge recommends that the District Court DENY the motion to suppress.

### I. FACTUAL BACKGROUND

On Saturday, March 15, 2008, Billy Fulmer ("Fulmer"), an Alabama State Trooper, ran a stationary radar along Interstate 85 near the Macon/Montgomery County line. Fulmer

saw a white Saturn Aura speeding in the southbound lane, and stopped the car at 3:24 p.m.[1] Fulmer approached the vehicle, checked license and insurance, and explained to the driver, Collins, that Alabama's "Move Over" law requires vehicles to move to the far lane and slow to 55 mph when passing a law enforcement vehicle with blue lights on. Moments earlier, Collins failed to slow to 55 mph when he passed another law enforcement vehicle with blue lights on. Fulmer told Collins that he would issue a warning, and told Collins to come to his vehicle while he wrote the warning ticket. The video shows a second trooper, Andy Sutley ("Sutley"), arrived at 3:26 and positioned himself at the front passenger door where he engaged in conversation with Collins and Fulmer. Collins, sat in the front passenger seat, engaged in general conversation with the troopers, and in response to Fulmer's question about arrest history, said he was arrested and incarcerated for possessing a kilogram of cocaine in 1993.

     Fulmer continued to prepare the warning ticket while engaged in conversation with Collins. Fulmer gave Collins his license at 3:32:00, vehicle documents at 3:32:17, and warning ticket at 3:32:52. Immediately upon receiving the written warning, Collins started to open the car door to return to his car, but stopped when Fulmer asked whether he had marijuana, cocaine, weapons, or a large amount of cash in the vehicle. Collins said not to each question. Fulmer asked if he could search the car, and told Collins that he could refuse to consent to the search. Collins gave verbal consent to the search at 3:33, and signed a

---

[1] A video/audio recording of the stop was entered into evidence during the hearing as Government Exhibit #4.

written consent form at 3:35 (Government Exhibit #2). Within one minute of receiving written consent, Fulmer searched the car, discovered a quantity of heroin, and returned to arrest Collins. The entire stop and search lasted 11 minutes and 18 seconds.

## II. DISCUSSION

Collins' *Motion to Suppress* rests upon two grounds. First, Collins argues his consent to the search of his car was involuntary, and second, Fulmer did not have reasonable suspicion to prolong the stop beyond writing the citation. The Court addresses these arguments in turn.

### A. Consent

Collins argues his consent for Fulmer to search his car was involuntary because he gave it while seated in the trooper's vehicle, next to Fulmer, while Sutley stood at the passenger door. Collins alleges his consent was coerced by this show of authority, and that a reasonable person would not have refused consent and left the scene despite having received his license, vehicle documents, and warning ticket. Collins did not testify that he personally felt that he was not free to leave the scene after Fulmer gave him back his license, documents and warning ticket. Indeed, the recording shows Collins was about to leave the car before Fulmer asked about his possession of contraband.

"An officer conducting a routine traffic stop may request consent to search the vehicle. (Citations omitted.) A consensual search is constitutional if it is voluntary; if it is the product of an 'essentially free and unconstrained choice.'" *United States v. Purcell*, 236 F.3d 1274, 1281 (11th Cir. 2001). A request for consent does not require some underlying

grounds such as reasonable cause to believe illegal activity is ongoing.  *Purcell* instructs that a court's assessment of voluntariness "is factual and depends on the totality of the circumstances."  *Id*., citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 222, 93 S.Ct. 2041 (1973).  Among the factors to be considered by courts' review of involuntary consent claims are the use of coercive police procedures, the extent of the defendant's cooperation, and the defendant's knowledge that he has the right to refuse consent.  *Purcell, id.; see also United States v. Ramirez*, 476 F.3d 1231, 1240 (11th Cir. 2007).

Here, the only coercion cited by Collins is the presence of two state troopers.  He cites several cases which look to what a reasonable person would have believed under those same circumstances.  *See Michigan v. Chestnut*, 486 U.S. 567, 108 S.Ct. 1975 (1988); *California v. Hodari D.*, 499 U.S. 621, 111 S.Ct. 1547 (1991).  Collins argues that he did not consent, and that no reasonable person flanked on each side by Troopers Fulmer and Sutley would have "felt free to simply say no, get out, walk back to his car, get in, and drive away." (Doc. #17, at 4.)  Fulmer's uncontroverted  testimony was  that Sutley had returned to his own vehicle by the time he began to question Collins about his possession of contraband.  No matter the location of Sutley at the time of these questions, the recording shows Collins was about to depart the trooper's vehicle when Fulmer asked about his possession of contraband, and consequently, permission to search Collins' car.  Collins' apparent belief that he could return to his car answers the "ultimate inquiry" as to whether "a reasonable person would feel free to terminate the encounter," and transformed the encounter into a consensual one.  *Ramirez*, *id.* at 1240.  Thus, the Court finds Collins reasonably believed he was able to return

to his car and continue on his way, and his consent was not coerced through any action by the two officers present during the stop.

The Court also finds Collins was aware of his right to refuse consent. The recording shows Fulmer told Collins in a non-threatening manner that he could refuse to consent, and the consent form entered into evidence clearly states a motorist has the right to refuse a search of his property. The record in this case confirms the voluntary nature of Collins' consent to search, and the evidence cannot be suppressed as the product of an involuntary consent to search.

### B. The Detention

The Fourth Amendment permits detention for investigative purposes if a police officer "has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot.'" *United States v. Sokolow*, 490 U.S. 1, 109 S.Ct. 1581, 1585 (1989); *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868 (1968). Collins argues a traffic stop may only be prolonged where an officer is able to articulate a reasonable suspicion of some other illegal activity beyond the traffic offense. *Purcell, id.* at 1277; *see also United States v. Hernandez*, 418 F.3d 1206 (11th Cir. 2005). Without some justification for prolonging the stop, he argues, the detention violates the Fourth Amendment and the evidence should be suppressed. (Doc. #17, at 5-6.)

In addition to reaffirming an officer's need for a particularized basis for further detention and investigation under the Fourth Amendment, *Hernandez* held that a defendant's consent to search restarts the clock for purposes of evaluating the duration of a detention. *Hernandez* at 1210, citing *United States v. Pruitt*, 174 F.3d 1215, 1220 (11th Cir. 1999).

Consent, then, removes reasonable suspicion from consideration in the length of traffic stops. The Court finds that the consent in this case was voluntary, and therefore valid, which leaves only the length of detention prior to consent at issue. *Hernandez*, *id.*; *Purcell* at 1279.  As in *Hernandez*, Collins does not claim the pre-consensual detention was excessive, but instead specifically acknowledges the pre-consensual detention in his case "did not extend beyond what might have been reasonable for just a routine traffic stop." (Doc. #17, at 5.)

The evidence shows Collins provided verbal consent to a search at 3:33, and completed the written consent form at 3:35. Both events occurred a scant nine and eleven minutes, respectively, from the start of the incident at 3:24 p.m. The recording shows Fulmer was not dilatory in his preparation of Collins' warning ticket, and he explained during the suppression that Georgia licenses require manual input of information into the record-keeping system of the Alabama Department of Public Safety. Both intervals in this case fall below the Eleventh Circuit's rulings addressing the duration of constitutional detentions. *See Hernandez,* 418 F.3d at 1212 n.7 (questioning whether a detention of seventeen minutes could ever be unconstitutional because the detention was too short); *Purcell*, 236 F.3d at 1277 (finding a detention of fourteen minutes "not unreasonable on its face."). The recording shows the pre-consensual portion of this traffic stop did not last "any longer than necessary to process the traffic violation." *Purcell*, 236 F.3d at 1277, quoting *United States v. Holloman*, 113 F.3d 192, 196 (11th Cir. 1997). Consequently, there was no unreasonable detention.

The consensual nature of the search in this case leaves the length of pre-consensual

detention as the only factor at issue in evaluating the constitutional reasonableness of Collins' detention. Collins admits the pre-consensual detentions of nine minutes (verbal consent), and eleven minutes (written consent), were not unreasonable for a routine traffic stop. The Court sees no basis to suppress the evidence discovered during the search, and therefore recommends the denial of Collins' motion to suppress evidence.

### III. CONCLUSION

For the foregoing reasons, it is the RECOMMENDATION of the Magistrate Judge that the motion to suppress filed by the defendant be DENIED.

***It is further ORDERED that the parties shall file any objections to the said Recommendation by June 26, 2008.***   Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en*

*banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

    Done this 13th day of June, 2008.

                              /s/ Terry F. Moorer
                              TERRY F. MOORER
                              UNITED STATES MAGISTRATE JUDGE